***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Homick and the briefs and arguments of the parties. The appealing party has shown good grounds to reconsider the evidence. Accordingly, the Full Commission reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award:
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act, and the North Carolina Industrial Commission has jurisdiction of the parties and of the subject matter. *Page 2 
2. An employee-employer relationship existed between plaintiff and defendant-employer.
3. The carrier liable on the risk is correctly named above.
4. There is no issue as to misjoinder or nonjoinder of parties.
5. Plaintiff's average weekly wage is $489.57, which yields a weekly compensation rate of $326.40.
6. Plaintiff sustained an injury on or about September 29, 2009.
7. The injury arose out of and in the course and scope of employment and is compensable.
8. Defendants paid temporary total disability compensation from September 30, 2009 through March 1, 2010.
9. The parties stipulated to the admissibility of the following documents, which were received into evidence before the Deputy Commissioner:
 • Exhibit 1: Pre-Trial Agreement;
 • Exhibit 2: Industrial Commission Forms and Filings, Letters, Workers' Compensation Check Receipts, Discovery Responses, Plaintiff's Medical Records, Employment Security Records, and Job Search Records;
 • Exhibit 3: Plaintiff's Employment Records (299 pages); and
 • Exhibit 4: Employment Security Commission Documents.
10. Plaintiff's issues for determination are as follows:
 a. Whether the March 17, 2010 Form 24 Order which terminated the then pro se plaintiff's temporary total disability compensation was improvidently granted? *Page 3 
 b. Whether additional temporary total disability compensation is due after March 1, 2010 and continuing since the then treating physician still has the employee on "work as tolerated" restrictions?
 c. The employee requests that defendants be directed to provide an accurate job video of the employee's knitter/creeler/inspector job.
 d. Whether the NCV and ultrasound recommended by Dr. Anthony DeFranzo should be ordered?
11. Defendants' issues for determination are as follows:
 a. Whether the Industrial Commission properly granted the Form 24 Application to Terminate or Suspend Payment of Compensation and has plaintiff failed to prove she is disabled and entitled to additional temporary total disability compensation?
 b. If plaintiff is entitled to payment of temporary total disability compensation, are defendants entitled to a credit of unemployment compensation received pursuant to N.C. Gen. Stat. § 97-42 and, if so, what is the amount of the credit?
 ***********
Based upon the preponderance of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 69 years old. Plaintiff had completed the seventh grade of her education. She had not obtained a General Education Development (GED) certificate. *Page 4 
2. Plaintiff worked as a knitter for over 35 years, with the last 13 years for defendant-employer. In her position with defendant-employer, plaintiff operated knitting machines to make medical hosiery, used to reduce swelling in patients' legs. In a typical eight hour day, plaintiff would operate 30 to 32 knitting machines and knit 80 to 90 dozen pair of medical hosiery.
3. Pursuant to a job description introduced at the deposition of Dr. William Lowe, an orthopedic surgeon, plaintiff spends 30% of her work time tying yarn and threading machines. Fifty percent (50%) of her work time is spent inspecting and packing hose. Both hands are used in repeated motions throughout the workday.
4. Plaintiff had a right carpal tunnel release in 2001 and a left carpal tunnel release in 2004, performed by Dr. Mark Brazinski. Defendants paid for the left hand surgery. After these surgeries, plaintiff returned to her knitter position with defendant-employer.
5. Over time, plaintiff again developed soreness in her right hand.
6. On September 30, 2009, plaintiff presented to William Vaassen, a physician's assistant, for her right hand condition. Plaintiff reported that her symptoms had been present for years, but had become increasingly symptomatic in the last several months. On October 9, 2009, Mr. Vaassen assigned work restrictions for plaintiff and prescribed medication to relieve pain, swelling and stiffness.
7. On November 2, 2009, plaintiff presented to Dr. William Lowe, an orthopedic surgeon who had completed a hand surgery fellowship, explaining that her current symptoms were similar to what she had experienced in the past. Dr. Lowe diagnosed plaintiff with right carpal tunnel syndrome, recurrent seven to eight years after her carpal tunnel release, trigger fingers of the right thumb and little finger, and thumb carpometacarpal (CMC) joint arthritis. Dr. Lowe released plaintiff from work for two weeks. *Page 5 
8. On November 16, 2009, Dr. Lowe opined that plaintiff had not responded adequately to conservative care and therefore recommended carpal tunnel and trigger finger releases, which he performed on December 30, 2009.
9. On January 6, 2010, plaintiff presented to Dr. Lowe, who noted that she was healing without problems. At this visit, Dr. Lowe opined that he would continue to restrict plaintiff from working, but planned to recheck her in two weeks for a return to light duty.
10. Because plaintiff had exhausted her twelve weeks of leave allowed by the Family Medical Leave Act (FMLA), on January 12, 2010, defendant-employer terminated plaintiff's employment and her position was subsequently filled. Defendants continued to provide workers' compensation benefits, including temporary total disability benefits, to plaintiff.
11. On February 2, 2010, defendants filed a Form 60 Employer's Admission of Employee's Right to Compensation admitting compensability for carpal tunnel syndrome of the right hand and injury to plaintiff's right thumb and "small finger trigger finger."
12. At plaintiff's February 3, 2010 visit to Dr. Lowe, her symptoms were decreasing and her function was returning. Dr. Lowe recommended that plaintiff participate in physical therapy to ameliorate the scar tenderness she was experiencing.
13. On March 3, 2010, Dr. Lowe released plaintiff to return to full duty and assigned a zero percent (0%) permanent partial disability rating to her right hand. Plaintiff reported she was "perfectly happy with her hand," which indicated to him that she was using her hand without restriction and did not have any recurrent problems or increase in symptoms. Dr. Lowe also noted plaintiff had no tenderness or soreness that plaintiff did not feel would work out on its own. Plaintiff had full range of motion, non-tender scars and her sensation was normal. *Page 6 
14. Based on Dr. Lowe's reports, defendants filed a Form 24 Application to Terminate or Suspend Payment ofCompensation, which was approved by Special Deputy Commissioner Emily Baucom on March 17, 2010, terminating plaintiff's compensation effective March 1, 2010.
15. On May 26, 2010, in response to correspondence from plaintiff's counsel, Dr. Lowe explained that plaintiff was at "no more risk" of recurrence of carpal tunnel syndrome than anybody else without prior surgery. In response to a question of whether it was reasonable for plaintiff to avoid repetitive activities with her hands, Dr. Lowe responded "only if repetitive activities cause recurrent problems." Lastly, Dr. Lowe answered "yes" to the question of whether it was reasonable that plaintiff work "as tolerated." Dr. Lowe explained at his deposition that he meant if plaintiff felt she could lift greater than 20 pounds, he would allow it. Dr. Lowe did not opine that it was medically necessary to assign any weight restrictions. The Full Commission finds, based on Dr. Lowe's response to plaintiff's counsel letter, that he did not release plaintiff to full duty work as she was restricted to "work as tolerated."
16. On September 30, 2010, plaintiff presented to Dr. Anthony DeFranzo, a board certified plastic and hand surgeon. Dr. DeFranzo noted that plaintiff was experiencing weak grip strength and positive Phalen and Tinel signs, which were indicative of continuing carpal tunnel syndrome. Dr. DeFranzo also noted that plaintiff had tendonitis resulting in trigger fingers.
17. Dr. DeFranzo diagnosed plaintiff with carpal tunnel syndrome and tendonitis with triggering, and testified to a reasonable degree of medical certainty that plaintiff's knitter job was the cause of her bilateral carpal tunnel syndrome.
18. Dr. DeFranzo opined that plaintiff was not at maximum medical improvement and recommended nerve conduction studies, an ultrasound of plaintiff's right upper extremity, and *Page 7 
injections. Dr. DeFranzo opined that plaintiff may have permanent partial disability of approximately fifteen (15%) percent to her right hand. Dr. DeFranzo assigned light duty sedentary job restrictions of a non-repetitive nature, with a ten-pound weight limit, and believes restrictions should have been assigned following the December 30, 2009 surgery. Dr. DeFranzo admitted that he did not base his restrictions on a Function Capacity Evaluation or any such exam designed to test plaintiff's physical abilities. Dr. DeFranzo did not release plaintiff from work, but rather specifically testified that he would encourage plaintiff to return to work within the assigned restrictions.
19. On November 16, 2010, plaintiff presented for the last time to Dr. Lowe, as he was relocating to Texas. Dr. Lowe admitted he did not perform a full examination at that time, because after he took plaintiff's history, he was convinced that her new symptoms were not work-related. Dr. Lowe testified that plaintiff told him specifically that her symptoms started to return approximately five to six months before, which would have been in May or June 2010. Dr. Lowe opined that with a three to four month history of basically asymptomatic function, his previous full duty release and permanent partial disability rating remained unchanged. Dr. Lowe opined that plaintiff's condition resolved after her surgical release. Dr. Lowe recommended no treatment plan and noted no restrictions on lifting. As Dr. Lowe was in the process of moving his practice to Texas, he did not address any new symptoms that plaintiff was experiencing.
20. Dr. Lowe testified to a reasonable degree of medical certainty that since plaintiff had not returned to work after her carpal tunnel release, her job duties could not have contributed to her new symptoms. He disagreed with Dr. DeFranzo's opinion that her symptoms were a continuation of her work injury. *Page 8 
21. The Full Commission assigns greater weight to the opinions of Dr. DeFranzo over those of Dr. Lowe as Dr. Lowe did not perform a full examination of plaintiff at the November 16, 2010 appointment and admitted that his opinions were based only on plaintiff's history. Plaintiff presented to Dr. DeFranzo on only one occasion, September 30, 2010. However, Dr. DeFranzo performed a full physical examination of plaintiff and based his opinions not only on plaintiff's history, but on her exam as well, and therefore the Commission assigns greater weight to Dr. DeFranzo's opinions.
22. At the hearing before the Deputy Commissioner, plaintiff testified that she looked for work and provided job logs starting in April 2010, when she applied for unemployment benefits with the Employment Security Commission. The Full Commission finds that plaintiff's job search was reasonable, but unsuccessful.
23. Plaintiff is not at maximum medical improvement with respect to her carpal tunnel syndrome of the right hand and injury to her right thumb and "small finger trigger finger", and will need future medical treatment.
24. The Full Commission finds that Dr. DeFranzo should be designated as plaintiff's authorized treating physician.
25. Based upon the preponderance of the evidence, plaintiff has proven that she has been temporarily and totally disabled from March 1, 2010, through the present and continuing. Following the termination of her benefits effective March 1, 2010, plaintiff applied for and received unemployment compensation and has been continuing to search for suitable employment. Dr. DeFranzo assigned light duty sedentary job restrictions of a non-repetitive nature, with a ten-pound weight limit. Based upon this testimony from Dr. DeFranzo and the restriction to "work as tolerated" by Dr. Lowe, the Full Commission finds that plaintiff has physical limitations due to her *Page 9 
admittedly compensable conditions that could be a barrier in her efforts to find suitable employment.
26. The Full Commission finds plaintiff has established that she was incapable of earning her pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by her compensable injury. Therefore, based upon the preponderance of the evidence, defendants were not entitled to terminate plaintiff's ongoing compensation, effective March 1, 2010, and the Full Commission finds that defendants' Form 24 application should have been denied.
27. Plaintiff received unemployment benefits from April 7, 2010, which were ongoing at the time of the hearing before the Deputy Commissioner, in the amount of $254.00 per week.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On February 2, 2010, defendants accepted plaintiff's claim pursuant to a Form 60 Employer's Admission of Employee's Right toCompensation for carpal tunnel syndrome of the right hand and right thumb and "small finger trigger finger." N.C. Gen. Stat. § 97-2(6).
2. The Form 60 does not create a presumption of continuing disability and therefore the burden of proving disability remains with plaintiff. Sims v. Charmes/Arby's Roast Beef,142 N.C. App. 154, 542 S.E.2d 277, disc. review denied,353 N.C. 729, 550 S.E.2d 782 (2001).
3. In order to meet the burden of proving disability, plaintiff must prove that she was incapable of earning pre-injury wages in either the same or in any other employment and that the *Page 10 
incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982).
4. An employee may meet his burden of proving disability in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work-related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but it would be futile because of pre-existing conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury. Russell v. Lowes Product Distribution,108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993).
5. A release to work with no specific work restrictions, but with the only activity restriction being that which plaintiff's symptoms would dictate, is not an unrestricted work release. Cummins v.BCCI Const. Enterprises,149 N.C. App. 180, 560 S.E.2d 369 (2002), disc. reviewdenied, 356 N.C. 611, 574 S.E.2d 678 (2002). Plaintiff was not given an unrestricted work release as she was restricted to work "as tolerated."
6. Plaintiff has proven that she has been temporarily totally disabled from employment since March 1, 2010. Plaintiff has physical limitations as a result of her carpal tunnel syndrome of the right hand and injury to her right thumb and "small finger trigger finger." Plaintiff applied for and received unemployment compensation and searched for suitable employment through the date of the hearing before the Deputy Commissioner. Plaintiff's efforts to find suitable employment have been reasonable, but unsuccessful. Therefore, Plaintiff is entitled to temporary total disability compensation in the amount $326.40 per week from March 1, 2010, *Page 11 
through the present and continuing. N.C. Gen. Stat. § 97-29;Hooker v. Stokes Reynolds Hospital/North Carolina Baptist Hosp.,Inc., 161 N.C. App. 111, 587 S.E.2d 440 (2003); Russell v.Lowes Prod. Distrib.,108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993).
7. Subject to the provisions of N.C. Gen. Stat. § 97-25.1, plaintiff is entitled to have defendants provide all medical treatment, incurred or to be incurred, necessitated by her compensable carpal tunnel syndrome of the right hand and injury to her right thumb and "small finger trigger finger", including but not limited to the NCV and ultrasound recommended by Dr. Anthony DeFranzo, when bills for the same have been approved pursuant to Industrial Commission Procedures. Dr. DeFranzo is approved as plaintiff's authorized treating physician. N.C. Gen. Stat. §§ 97-2(19); 97-25; 97-25.1.
8. Defendants are entitled to a credit for the unemployment compensation benefits plaintiff has received. N.C. Gen. Stat. § 97-42.1.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following:
 AWARD
1. Subject to an attorney's fee hereinafter approved, defendants shall pay temporary total disability compensation to plaintiff at the rate of $326.40 per week from March 1, 2010, and continuing until further Order of the Industrial Commission.
2. Defendants are entitled to a credit to be deducted from the accrued compensation owed plaintiff for the amount of unemployment compensation plaintiff has received since March 1, 2010. *Page 12 
3. Defendants shall pay all past and future medical expenses incurred or to be incurred as a result of plaintiff's compensable carpal tunnel syndrome of the right hand and injury to her right thumb and "small finger trigger finger", including but not limited to the NCV and ultrasound recommended by Dr. Anthony DeFranzo, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. Dr. DeFranzo is approved as plaintiff's authorized treating physician.
4. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation due plaintiff under Paragraph One of this Award is approved for plaintiff's counsel and shall be paid by defendants as follows: twenty-five percent (25%) of the accrued compensation due plaintiff shall be deducted from that amount and be paid directly to plaintiff's attorney. Thereafter, defendants shall pay every fourth compensation payment due plaintiff to plaintiff's counsel as an attorney's fee.
5. Defendants shall pay the costs
This the 27th day of October, 2011.
 S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/___________________ TAMMY R. NANCE COMMISSIONER *Page 13 
 S/___________________ PAMELA T. YOUNG CHAIR *Page 1